1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

10
11
12
13
14

| JEFF EUBANK, | CASE NO. 15cv00145-WQH (JMA) |
|---|---|
| Plaintiff, | ORDER |
| vs. | |
| TERMINIX INTERNATIONAL, INC., | |
| Defendant. | |

15  HAYES, Judge:

16      The matter before the Court is the Motion to Dismiss and Compel Arbitration

17  filed by Defendant Terminix International, Inc.  (ECF No. 10).

18  **I. Background**

19      On December 18, 2014, Plaintiff Jeff Eubank commenced this action by filing

20  a class action complaint in San Diego County Superior Court.  (ECF No. 1-2).  On

21  January 21, 2015, Defendant Terminix International, Inc. removed to this Court

22  pursuant to the Class Action Fairness Act, 28 U.S.C. section 1332(d).  (ECF No. 1).  On

23  January 27, 2015, Defendant filed a motion to dismiss and compel arbitration.  (ECF

24  No. 5).  On February 7, 2015, Plaintiff filed the First Amended Complaint ("FAC"),

25  which is the operative complaint in this case.  (ECF No. 7).  On February 13, 2015, the

26  Court issued an Order denying the motion to dismiss and compel arbitration as moot.

27  (ECF No. 8).

28      On February 26, 2015, Defendant filed the Motion to Dismiss and Compel

Arbitration. (ECF No. 10). On March 23, 2015, Plaintiff filed an opposition. (ECF No. 12). On March 30, 2015, Defendant filed a reply. (ECF No. 13).

On April 21, 2015, the Court issued an Order, granting in part the Motion to Dismiss and Compel Arbitration. (ECF No. 19). The Court directed the parties "to proceed to arbitration in accordance with the terms of the Plan with respect to Plaintiff's first through sixth and ninth claims" but left the motion pending with respect to Plaintiff's seventh and eighth claims brought pursuant to California's Private Attorneys General Act of 2004 ("PAGA"). *Id.* at 8. In opposition and at oral argument, Plaintiff contended that the representative action waiver in the parties' arbitration agreement (the "Plan") was unenforceable to the extent that it entirely extinguished his PAGA claims. The Court therefore requested supplemental briefing on whether "the Plan's representative action waiver, if interpreted to cover Plaintiff's seventh and eighth claims, falls under the 'effective vindication' exception to the FAA." *Id.* at 7.

On May 5, 2015, Defendant filed a supplemental brief. (ECF No. 20). On May 18, 2015, Plaintiff filed an opposition. (ECF No. 21). On May 26, 2015, Defendant filed a reply. (ECF No. 23). On June 19, 2015, Plaintiff filed a Notice of Lodgment of Supplemental Authority. (ECF No. 24). On June 25, 2015, Defendant filed a response to Plaintiff's Notice of Lodgment of Supplemental Authority. (ECF No. 25). On June 25, 2015, Plaintiff filed an objection to Defendant's response. (ECF No. 26). On June 29, 2015, the Court issued an Order, granting Plaintiff leave to file a three-page response to Defendant's response. (ECF No. 27). On July 2, 2015, Plaintiff filed a response to Defendant's response. (ECF No. 28).

## II. Allegations of the FAC

"This is a representative action for recovery of penalties under the California Labor Code Private Attorneys General Act of 2004 ('PAGA'), Cal. Lab. Code section 2698 et seq." (ECF No. 7 at 2). "Plaintiff brings this action pursuant to PAGA, on behalf of himself and for the benefit of all other persons employed by Defendants, and each of them, in the position of 'pest control technician' covered by Wage Order 5 who

were not paid wages pursuant to California law prior and subsequent to the date this action was filed, during the PAGA Period (which commences one year prior to the filing of this action and continues until judgment is rendered herein) (hereinafter 'AGGRIEVED EMPLOYEES')[.]" *Id.*

"Defendant maintained time records using portable devices, and an application installed on the devices." *Id.* at 6. Plaintiff and other "aggrieved employees" were required to use this device to clock out for lunch, but "it was frequently not possible to take a meal break before the end of the fifth hour of work." *Id.* After five hours, the application would prevent Plaintiff and "aggrieved employees" from clocking out for lunch. Plaintiff and "aggrieved employees" were instructed that "they must clock out to create an artificial time punch showing that a timely meal break was provided, regardless of whether they in fact worked through their meal breaks." *Id.* "As a result, Plaintiff and aggrieved employees are not relieved of all duties during their meal and rest periods as is required by law." *Id.* at 7.

"Further, Defendants do not fully pay Plaintiff and aggrieved employees for time spent performing required activities that are necessary and integral to their overall employment responsibilities." *Id.* For example, Plaintiff and "aggrieved employees" are not paid for waiting time at the beginning of their shifts.

Plaintiff asserts the following claims for relief on his own behalf: (1) minimum wages and liquidated damages pursuant to California Labor Code sections 558, 1194.2, 1197 and 1198, and Wage Order 5; (2) overtime and double time wages pursuant to California Labor Code sections 218.6, 558, and 1194, and Wage Order 5; (3) rest periods pursuant to California Labor Code sections 226.7, 558, and 1198, and Wage Order 5; (4) meal periods pursuant to California Labor Code sections 226.7, 512, 558, and 1198, and Wage Order 5; (5) itemized wage statement penalties pursuant to California Labor Code sections 226 and 558; (6) waiting time penalties pursuant to California Labor Code sections 201 through 203 and 558; and (7) restitution for unlawful competition in violation of Business and Professions Code sections 17200 *et*

*seq.* ("UCL").  Plaintiff asserts the following claims for relief on his own behalf and on behalf of "aggrieved employees": (1) penalties under California Labor Code section 558; and (2) remedies under California Private Attorneys General Act of 2004 ("PAGA").  Plaintiff requests damages, restitution, Labor Code penalties, interest, costs, attorneys' fees, civil penalties, and penalties pursuant to PAGA.

## III.  Facts

On May 20, 2008, Plaintiff executed an Arbitration Agreement in connection with his employment with Defendant.  (Declaration of Lisa Shapleigh ("Shapleigh Decl.) ¶ 4).  "On August 15, 2012, Plaintiff executed the We Listen Dispute Resolution Plan 2012 revision." *Id.* ¶ 5.

The We Listen Dispute Resolution Plan (the "Plan") provides:

> The Company and I mutually consent to resolution under the Plan and to final and binding arbitration of all Disputes, including, but not limited to, any preexisting, past, present, or future Disputes, which arise out of or are related to my application for employment, my employment, the termination of my employment, or reemployment, on-duty or off-duty, in or outside the workplace, that I may have against any of the following: (i) the Company; (ii) its current and former officers, directors, employees, or agents in their capacity as such or otherwise; (iii) the Company's parent, subsidiary, and affiliated entities; and/or (iv) all successors and assigns of any of them, or that the Company may have against me.  Further, Disputes include any claim or controversy regarding the Plan itself or its interpretation, applicability, unconscionability, arbitrability, enforceability or formation, with the exception noted in the Class Action Waiver clause.[1]

Shapleigh Decl. Ex. B, ECF No. 10-1 at 10.  The Plan covers "claims under federal or state law regarding wages, wage penalties, classification, reimbursement of expenses, compensation, stock or incentive bonus plans, or intellectual property rights and associated laws." *Id.*  The Plan provides for a three-step dispute resolution process: (1) Senior Executive Review; (2) Mediation; and (3) Arbitration.

Clause Eight of the Plan is titled "Jury Trial Waiver and Exclusive Remedy" and

---

[1]  Paragraph 10, titled "Class Action Waiver," provides, in relevant part: "**I ALSO HEREBY WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED OR ARBITRATED AS A REPRESENTATIVE ACTION.** However, this representative action waiver may be severed if it would otherwise render this Plan unenforceable in any action brought under a private attorneys general law." (Shapleigh Decl. Ex B, ECF No. 10-1 at 11-12).

provides, in relevant part:

> **I HEREBY WAIVE MY RIGHT TO A COURT OR JURY TRIAL AND AGREE THAT THE PLAN IS THE EXCLUSIVE REMEDY THE COMPANY AND I HAVE FOR RESOLUTION OF DISPUTES** ... If I do file a claim in any federal or state court or administrative tribunal, the Company may seek a stay or dismissal of the claim and compel arbitration and the dispute resolution steps under the Plan. **I UNDERSTAND AND AGREE THAT MY SOLE AND FINAL LEGAL REMEDY IS BINDING ARBITRATION**.

*Id.* at 11.

Clause Ten of the Plan is titled "Class Action Waiver" and provides, in full:

> **I HEREBY WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED OR ARBITRATED AS A CLASS AND/OR COLLECTIVE ACTION.** Notwithstanding any other clause in this Plan, the proceeding sentence shall not be severable from this Plan in any instance in which the Dispute to be arbitrated is brought as a class and/or collective action. **I ALSO HEREBY WAIVE ANY RIGHT FOR ANY DISPUTE TO BE BROUGHT, HEARD, DECIDED OR ARBITRATED AS A REPRESENTATIVE ACTION.** However, this representative action waiver may be severed if it would otherwise render this Plan unenforceable in any action brought under a private attorneys general law.

*Id.* at 11-12.

The Plan also contains a choice-of-law provision, which provides in relevant part:

> As the Company is headquartered in Tennessee and both parties have and will continue to have substantial contacts with the State of Tennessee in the performance of this Plan, I expressly agree that this Plan shall be construed, interpreted and its validity and enforceability determined, strictly in accordance with the Federal Arbitration Act (9 U.S.C. §1, *et seq.*) and the laws of the State of Tennessee, without applying its conflicts of laws principles, unless otherwise required by applicable law.

*Id.* at 12.

## IV. Discussion

Defendant moves for an Order dismissing all of Plaintiff's claims, or in the alternative, dismissing Plaintiff's representative action and compelling arbitration of Plaintiff's individual claims. Defendant moves pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(3), and 12(b)(6) and section 3 of the Federal Arbitration Act.

### A. The Federal Arbitration Act

The Federal Arbitration Act ("FAA") "was enacted ... in response to widespread judicial hostility to arbitration agreements." *AT&T Mobility LLC v. Concepcion*, 131 S. Ct. 1740, 1745 (2011) (citation omitted). Section 2 of the FAA provides: "A written provision in any ... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Section 2 of the FAA "reflect[s] both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract." *Concepcion*, 131 S. Ct. at 1745 (quotations omitted). "In line with these principles, courts must place arbitration agreements on an equal footing with other contracts, and enforce them according to their terms." *Id*. at 1745-46 (citations omitted).

"The basic role for courts under the FAA is to determine (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Kilgore v. KeyBank, Nat'l Ass'n*, 718 F.3d 1052, 1058 (9th Cir. 2013) (en banc) (quotation omitted). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "[T]he party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 91-92 (2000).

Pursuant to section 4 of the FAA, a party may move for a district court order compelling arbitration:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

9 U.S.C. § 4. Pursuant to section 3 of the FAA, a party may move for a court order

staying a federal action pending arbitration:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Alternatively, a district court has discretion to dismiss an action in favor of arbitration. *Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 725 (9th Cir. 2000); *Sparling v. Hoffman Const. Co., Inc.*, 864 F.2d 635, 638 (9th Cir. 1988).

> The [FAA] has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation. From this it follows that state and federal courts must examine with care the complaints seeking to invoke their jurisdiction in order to separate arbitrable from nonarbitrable claims. A court may not issue a blanket refusal to compel arbitration merely on the grounds that some of the claims could be resolved by the court without arbitration.

*KPMG LLP v. Cocchi*, 132 S. Ct. 23, 24 (2011) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 217 (1985)).

**B. Contentions of the Parties**

Defendant contends that the Plan's agreement to arbitrate is valid and enforceable. Defendant contends that the enforceability of the Plan's agreement to arbitrate is to be determined pursuant to Tennessee law because of the Plan's choice-of-law provision. Defendant contends that Tennessee bears a substantial relationship to the parties in this action, and application of Tennessee law does not contravene fundamental California public policy. Alternatively, Defendant contends that the Plan's agreement to arbitrate is valid and enforceable under California law. Defendant contends that Plaintiff's California PAGA claims are covered by the representative action waiver.

Plaintiff contends that the Plan's agreement to arbitrate and representative action waiver cannot cover Plaintiff's representative claims brought pursuant to California's PAGA because the California Supreme Court has held that PAGA claims are neither

1    arbitrable nor waivable on the ground that a plaintiff cannot bind the government by

2    contract.  Plaintiff contends that the plain language of the representative action waiver

3    does not cover representative actions brought pursuant to PAGA.  Plaintiff contends

4    that Defendant's choice-of-law contentions are a "Red Herring" because "California's

5    government enforcement standards undoubtedly apply."  (ECF No. 12 at 16 n. 11).

6         In reply, Defendant contends that PAGA claims are subject to the FAA, and the

7    State of California cannot override the FAA's requirements.  Defendant contends that

8    Plaintiff has agreed to arbitrate his claims, and Plaintiff's PAGA claims are his own

9    claims, regardless of whether Plaintiff stands in the government's shoes.

10        In its supplemental brief, Defendant contends that the "effective vindication"

11   exception to the FAA is inapplicable to state-law claims.  In opposition, Plaintiff

12   contends that PAGA provides Plaintiff with a substantive state-law right and remedy.

13   Plaintiff contends that his PAGA claims cannot be severed in a way that allows him to

14   bring them individually, so enforcement of the Plan's representative waiver would fully

15   extinguish his PAGA claims.  Plaintiff contends that Supreme Court precedent and

16   California law prohibit an employee from prospectively waiving a substantive right.

17        **C.  Exceptions to the FAA**

18        "The 'effective vindication' exception [to the FAA] ... expresse[s] a willingness

19   to invalidate, on 'public policy' grounds, arbitration agreements that 'operat[e] ... as a

20   prospective waiver of a party's *right to pursue* statutory remedies.'" *Am. Exp. Co. v.*

21   *Italian Colors Rest.*, 133 S. Ct. 2304, 2310 (2013) (quoting *Mitsubishi Motors Corp.*

22   *v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 637 n.19 (1985)) (emphasis in original).

23   "[T]he exception finds its origin in the desire to prevent 'prospective waiver of a party's

24   *right to pursue* statutory remedies.'" *Id.* (quoting *Mitsubishi Motors*, 473 U.S. at 637

25   n.19) (emphasis in original).  However, the "effective vindication" exception applies

26   only to federal claims.  *See Coneff v. AT&T Corp.*, 673 F.3d 1155, 1158 n.2 (9th Cir.

27   2012) ("*Mitsubishi*, *Gilmer*, *Green Tree* and similar decisions are limited to federal

28   statutory rights."); *Ferguson v. Corinthian Colls., Inc.*, 733 F.3d 928, 936 (9th Cir.

2013) ("The 'effective vindication' exception ... does not extend to state statutes.") (citing *Italian Colors*, 133 S. Ct. at 2320 (Kagan, J., dissenting)).

The Court concludes that the "effective vindication" exception does not render the Plan's representative action waiver unenforceable.  Accordingly, the Court will interpret the Plan under state law and enforce the plan according to its terms, as required by the FAA.

### D. *Iskanian v. CLS Transp. L.A., LLC*, 59 Cal. 4th 348 (2014)

In *Iskanian*, the California Supreme Court considered whether a "representative action" waiver in an employment contract that covers PAGA actions "are permissible under state law and, if not, whether the FAA preempts a state law rule prohibiting such waivers." *Iskanian*, 59 Cal. 4th at 308-09.  The California Supreme Court began its analysis by noting that "[t]here is no dispute that the contract's term 'representative actions' covers representative actions under the Private Attorneys General Act." *Id.*

The California Supreme Court first held that "where ... an employment agreement compels the waiver of representative claims under the PAGA, it is contrary to public policy and unenforceable as a matter of state law." *Id.* at 384.  The court reasoned that a PAGA action is an enforcement action brought on behalf of California's Labor and Workforce Development Agency ("LWDA") in order to enforce the Labor Code and deter unlawful practices.  The court then relied on California Civil Code sections 1668 and 3513 and concluded that an "employee's right to bring a PAGA action" is an "unwaivable" statutory right.[2] *Id.* at 383.

The California Supreme Court then held that this newly announced rule "does not interfere with the FAA's goal of promoting arbitration as a forum for private dispute resolution." *Id.* at 389.  The court reasoned that the objective of the FAA is to ensure

---

[2]  California Civil Code section 1668 provides that "[a]ll contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law."  Cal. Civ. Code § 1668.  California Civil Code section 3513 provides: "Anyone may waive the advantage of a law intended solely for his benefit.  But a law established for a public reason cannot be contravened by a private agreement."  Cal. Civ. Code § 3513.

resolution of private disputes, whereas PAGA actions are disputes between an employer and the state. The court noted that all United States Supreme Court FAA cases involved private disputes, with the only exception being *EEOC v. Waffle House, Inc.*, 534 U.S. 279 (2002). The court concluded that *Waffle House* did not support preemption because *Waffle House* held that an arbitration agreement could not prevent the Equal Employment Opportunity Commission from suing an employer on behalf of an employee. "Simply put, a PAGA claim lies outside the FAA's coverage because it is not a dispute between an employer and an employee arising out of their contractual relationship. It is a dispute between an employer and the *state*...." *Id.* at 386 (emphasis in original).

### E. Choice of Law, Interpretation, and Enforceability

Defendant contends that Tennessee law applies in interpreting the Plan pursuant to an enforceable choice-of-law provision. Plaintiff contends that Defendant's choice-of-law contention is not relevant because the agreement between Plaintiff and Defendant cannot bind California's LWDA, the real party in interest to a PAGA claim.

Arbitration agreements are to be interpreted by "applying general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont*, 83 F.3d 1046, 1049 (9th Cir. 1996). Federal courts sitting in diversity jurisdiction look to the law of the forum state in choice-of-law determinations. *Fields v. Legacy Health Sys.,* 413 F.3d 943, 950 (9th Cir. 2005). Accordingly, California's choice-of-law rules apply to this diversity action initially filed in San Diego County Superior Court and removed to the Southern District of California.

The Supreme Court of California has stated that California choice-of-law rules and the Restatement (Second) of Conflict of Laws reflect strong policy considerations favoring the enforcement of freely negotiated choice-of-law clauses in contracts. *Nedlloyd Lines B.V. v. Superior Court,* 3 Cal. 4th 459, 462 (1992). As such, a freely

negotiated contractual choice-of-law provision will be enforced in California unless "(a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state...." *Id.* at 465 (quoting § 187(2) of the Restatement (Second) of Conflict of Laws).

A "party's 'domicile' in the chosen state provides a sufficient relationship to support the choice-of-law provision." *Hambrecht & Quist Venture Partners v. Am. Med. Int'l, Inc.,* 38 Cal. App. 4th 1532, 1546 (1995). Because Terminix is headquartered in Tennessee, the chosen forum has a substantial relationship to the parties and transaction.

The Court must next determine whether application of Tennessee law "would be contrary to a fundamental policy" of California and whether California has a "materially greater interest than" Tennessee in determining whether the representative action waiver encompasses PAGA claims and whether such waiver is enforceable. *Nedlloyd*, 3 Cal. 4th at 465. Under Tennessee law, an unambiguous contract is to be interpreted according to its plain terms. *See Petty v. Sloan*, 197 Tenn. 630, 638-39 (1955). In this case, Plaintiff unambiguously waived the right to bring a "representative action." Although the Plan does not define "representative action," the sentence following the representative action waiver makes clear that "representative action" includes actions under a "private attorneys general act." *See* Shapleigh Decl. Ex B, ECF No. 10-1 at 12 ("However, this representative action waiver may be severed if it would otherwise render this Plan unenforceable in any action brought under a private attorneys general law."). There do not appear to be any cases interpreting Tennessee law to preclude enforcement of a representative action waiver that includes private attorney general act claims. Accordingly, under Tennessee law, Plaintiff would be precluded from bringing a PAGA action.

However, application of Tennessee law in this case "would be contrary to a

fundamental policy" of California, which has a "materially greater interest than" Tennessee in determining whether a representative action waiver is enforceable. *Nedlloyd*, 3 Cal. 4th at 465. *Iskanian* held that PAGA waivers are "contrary to public policy and unenforceable as a matter of state law." *Iskanian*, 59 Cal. 4th at 384. California has a materially greater interest than Tennessee in determining the enforceability of the representative action waiver because the Plan governs Plaintiff's employment in California.

Despite California's choice-of-law test militating toward application of California law, the Court concludes that the California rule barring PAGA representative action waivers is preempted by the FAA. This Court has found a similar PAGA representative action waiver to be enforceable. *See Grabowski v. Robinson*, 817 F. Supp. 2d 1159, 1181 (S.D. Cal. 2011). In *Grabowski*, this Court declined to follow a California Court of Appeal decision holding that PAGA waivers are unenforceable. *Id.* at 1181 (citing *Brown v. Ralphs Grocery Co.*, 197 Cal. App. 4th 489 (2011)). This Court reasoned that the United States Supreme Court has held that a state "cannot require a procedure that is inconsistent with the FAA, even if it is desirable for unrelated reasons" or "prohibit[] outright the arbitration of a particular type of claim." *Id.* (quoting *Concepcion*, 131 S. Ct. at 1753, 1747).

The majority of California district courts have continued to enforce representative action waivers that cover PAGA claims, despite the holding of *Iskanian*. *See Fardig v. Hobby Lobby Stores, Inc.*, No. SACV 14-00561, 2014 WL 4782618, at *4 (C.D. Cal. Aug. 11, 2014) ("Even in light of *Iskanian*, the Court continues to hold that the rule making PAGA claim waivers unenforceable is preempted by the FAA."); *Langston v. 20/20 Cos., Inc.*, No. EDCV 14-1360, 2014 WL 5335734, at *7 (C.D. Cal. Oct. 17, 2014) ("[A]lthough the [*Iskanian*] court asserts that the basis for holding representative PAGA claim waivers unconscionable is that an employee cannot waive a right that properly belongs to the government, the court nevertheless acknowledges that an employee may actually sometimes waive the government's right to bring a PAGA

claim. That inconsistency illuminates the fact that, it is not an individual's ability to waive the government's right that drives the court's rule, but rather the court's general disfavor for pre-existing agreements to arbitrate such claims individually."); *Mill v. Kmart Corp.*, No. 14-cv-02749, 2014 WL 6706017, at *7 (N.D. Cal. Nov. 26, 2014) (finding that California's rule against PAGA waivers is preempted by the FAA and concluding that the PAGA waiver at issue was not substantively unconscionable); *Ortiz v. Hobby Lobby Stores, Inc.*, 52 F. Supp. 3d 1070, 1083-86 (E.D. Cal. Oct. 1, 2014) (to same effect); *Chico v. Hilton Worldwide, Inc.*, No. CV 14-5750, 2014 WL 5088240, at *12-13 (C.D. Cal. Oct. 7, 2014) (to same effect). *But see Hernandez v. DMSI Staffing, LLC*, No. C-14-1531, 2015 WL 458083, at *6-10 (N.D. Cal. Feb. 3, 2015) (following *Iskanian* and concluding that California's rule prohibiting waiver of PAGA claims is not preempted by the FAA).

This Court agrees with the majority of California district courts that have held that California's rule against PAGA waivers is preempted by the FAA. California's rule against PAGA waivers in arbitration agreements "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress[,]" namely, "to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941); *Concepcion*, 131 S. Ct. at 1748 (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)). California's rule permits an employee to circumvent his or her agreement to arbitrate employment-related claims by filing a PAGA action in court. The Court concludes that the California rule finding waivers of PAGA actions unenforceable is preempted by the FAA.

Accordingly, the Court is left with two choices: (1) applying Tennessee law; or (2) applying California contract law without applying the California rule that PAGA waivers are unenforceable. The result would be the same under California contract law as it would be under Tennessee contract law: the plain language of the Plan waives representative actions, including those brought pursuant to PAGA. *See* Cal. Civ. Code

§ 1638 ("The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."); *see also Iskanian*, 59 Cal. 4th at 378 (noting that with respect to an arbitration agreement that required waiver of "representative actions," ... "[t]here is no dispute that the contract's term 'representative actions' covers representative actions brought under [California's Private Attorneys General Act]").

The Court concludes that the Plan covers Plaintiff's PAGA claims and is enforceable under Tennessee law. Alternatively, the Court concludes that the Plan covers Plaintiff's PAGA claims and is enforceable under California contract law (after recognizing that the rule declaring PAGA waivers unenforceable is preempted by the FAA).

**F.  Dismissal or Stay**

Plaintiff contends that stay, rather than dismissal, of his PAGA claims is appropriate because enforcement of the representative action waiver "would entirely extinguish distinct government enforcement claims, and distinct, non-overlapping penalties, brought pursuant to Labor Code §§ 2698 *et. seq.*" (ECF No. 12 at 20). Plaintiff asserts PAGA claims on behalf of himself and "aggrieved employees." Pursuant to the Plan, Plaintiff is precluded from asserting PAGA claims on behalf of "aggrieved employees." Plaintiff's seventh and eighth claims are dismissed with prejudice to the extent they are brought in a representative capacity. To the extent Plaintiff asserts PAGA claims individually, the parties must proceed to arbitration in accordance with the terms of the Plan.[3]

**V.  Conclusion**

IT IS HEREBY ORDERED that the Motion to Dismiss and Compel Arbitration (ECF No. 10) is GRANTED. Plaintiff's seventh and eighth claims are DISMISSED WITH PREJUDICE to the extent they are brought in a representative capacity. Pursuant

---

[3] The Court expresses no opinion on whether Plaintiff may assert PAGA claims on an individual basis.

to 9 U.S.C. section 4, the parties are directed to proceed to arbitration in accordance with the terms of the Plan with respect to all individual claims.  Pursuant to 9 U.S.C. section 3, this action is STAYED pending the outcome of arbitration.  The Clerk of the Court shall administratively close this case without prejudice to any party moving to have the case reopened for good cause.

DATED:  July 22, 2015

**WILLIAM Q. HAYES**
United States District Judge

15cv00145-WQH (JMA)